701 So.2d 1238 (1997)
Peter NORIS, Appellant,
v.
Theodore SILVER, Appellee.
No. 95-2566.
District Court of Appeal of Florida, Third District.
December 3, 1997.
*1239 Sack, Gladstein & Marks and Harlan M. Gladstein, Miami, for appellant.
Cooper & Wolfe and Marc Cooper and Christine M. Ng, Miami; Kopplow & Flynn, Miami, for appellee.
Before NESBITT, COPE and GODERICH, JJ.

On Motion for Rehearing and Certification
PER CURIAM.
Upon consideration of appellee's motion for rehearing and certification we withdraw this Court's previous opinion and substitute the following opinion:
The plaintiff, Peter Noris, appeals from an adverse final summary judgment as to his legal malpractice claim and from an order dismissing his negligent referral claim. We affirm in part and reverse in part.
Plaintiff, a resident of Dade County, Florida, was injured in Chicago, Illinois, when a vehicle struck his bicycle. After the accident, plaintiff contacted appellee attorney Theodore Silver. Plaintiff and Silver were social acquaintances, but Silver had previously represented plaintiff in two legal matters. Silver informed plaintiff that he did not handle personal injury cases and therefore referred plaintiff to attorney Steven M. Falk. Silver had previously referred other cases to Falk and in those cases, Silver received a share of any fee recovered by Falk.
Plaintiff retained Falk to represent him in the personal injury case. The agreement between Falk and plaintiff did not make any reference to a division of the attorney's fee between Falk and Silver. Moreover, Falk and Silver never entered into a written agreement indicating that Falk and Silver would divide the attorney's fee.
Falk contacted the Chicago driver's insurance company in an attempt to settle the personal injury action. Falk, however, failed to file suit within the Illinois two-year statute of limitations. Thereafter, plaintiff filed the present action against Falk for legal malpractice[1] and against Silver for legal malpractice and negligent referral.
Silver filed a motion to dismiss the negligent referral claim for failure to state a cause of action. The trial court granted the motion. Thereafter, Silver moved for summary judgment on the legal malpractice claim arguing that because Silver did not represent *1240 plaintiff in the personal injury case, he could not be held liable for legal malpractice. The trial court granted Silver's motion for summary judgment, and this appeal ensued.
Plaintiff contends that the trial court erred in granting Silver's motion for summary judgment as to the legal malpractice claim. We agree.
Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Holl v. Talcott, 191 So.2d 40 (Fla.1966). In the instant case, there is a genuine issue of material fact as to whether Silver retained a financial interest in plaintiff's personal injury case by entering into an express or implied agreement to divide the legal fee.
This issue of fact is material because pursuant to Rule Regulating The Florida Bar 4-1.5(g),[2] if Falk and Silver agreed to divide the attorney's fee, Silver would be liable for the malpractice committed by Falk. Attorneys in different firms may divide fees under two circumstances: first, if the "division is in proportion to the services performed by each lawyer," R. Regulating Fla. Bar 4-1.5(g)(1); and second, if the client agrees in writing and the agreement discloses "the basis upon which the division of fees will be made," R. Regulating Fla. Bar. 4-1.5(g)(2). Moreover, when fees are divided pursuant to Rule 4-1.5(g)(2), "each lawyer assumes joint legal responsibility for the representation...." Therefore, if Silver and Falk agreed to divide the attorney's fee, Silver would be liable for the malpractice committed by Falk.
Silver argues that because the purported oral agreement to divide the fee would not be enforceable, since there was no written agreement with the client as required by Rule 4-1.5(g)(2), he cannot be held liable for any malpractice committed by Falk. We disagree.
It is true that if Falk had recovered attorney's fees, Silver could not have enforced the purported oral agreement against Falk since the agreement did not comply with Rule 4-1.5(g)(2). See Chandris, S.A. v. Yanakakis, 668 So.2d 180, 185 (Fla.1995). However, we find that the failure to comply with Rule 4-1.5(g) cannot be used to shield a referring attorney from a legal malpractice claim made by a client. To hold otherwise would allow attorneys to thwart their responsibility to a client by intentionally disregarding the Rules Regulating The Florida Bar.[3] This cannot be condoned. It would also be unfair to lawyers *1241 who comply with Rule 4-1.5 to allow an avenue of escape for those who do not. Accordingly, we hold that if Falk and Silver agreed to divide the attorney's fees, then Silver is legally responsible for the malpractice committed by Falk.
We point out that in order for the plaintiff to prevail, the plaintiff must prove that there was an express or implied agreement between the referring attorney, Silver, and the working attorney, Falk, to divide the legal fee. The plaintiff can prove this by showing that there was an express agreement for division of the fee. Alternatively, plaintiff can show that there was an implied agreement, for example by showing a past course of dealing whereby it was understood between the two attorneys that a fee would be paid in exchange for referrals. When the summary judgment record is read in the light most favorable to the plaintiff as nonmoving party, the evidence supports the existence of an implied agreement for division of the fee in this case.[4]
It would not, however, be enough for the plaintiff simply to show that the working attorney had a unilateral, subjective intent to pay a referral fee. Some attorneys make it a practice to offer a referral fee, whether the referring attorney has requested it or not. Some attorneys make it a practice to decline to accept referral fees when offered, or may request that the referral fee instead be rebated to the client. The fact that the working attorney routinely pays referral fees is not, in and of itself, enough to establish an agreement between the referring and the working attorney. Plaintiff must prove an express or implied agreement to divide the fee.
Since this is an issue which should be authoritatively resolved by the Florida Supreme Court, we certify that we have passed on a question of great public importance:
Where there is an express or implied agreement for the payment of a referral fee, but the attorneys have not executed the written agreement required by Rule Regulating The Florida Bar 4-1.5(g), is the referring attorney civilly liable in the event of legal malpractice by the working attorney?[5]
Finally, because Noris' claim for negligent referral did not allege that Silver had knowledge of any facts that would indicate that Falk would commit malpractice and because Noris' counsel conceded during oral argument that Silver had no such knowledge, we affirm the trial court's order dismissing the negligent referral claim.
Affirmed in part, and reversed in part, and remanded for further proceedings consistent herewith; question certified.
NOTES
[1] Falk is not a party to this appeal. He has stipulated to liability for failing to timely file suit.
[2] Rule Regulating The Florida Bar 4-1.5(g), provides as follows:

(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fees between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
[3] We note that several ethics opinions have arrived at similar conclusions under the same or similar rules. See American Bar Assoc. Committee on Ethics and Professional Responsibility Informal Opinion 85-1514 (stating that under the Model Rules of Professional Conduct, acceptance of a referral fee and "assumption of `joint responsibility for the representation' includes assumption of responsibility [to the client] comparable to that of a partner in a law firm under similar circumstances, including financial responsibility, ethical responsibility to the extent a partner would have ethical responsibility for actions of other partners in a law firm in accordance with Rule 5.1, and the same responsibility to assure adequacy of representation and adequate client communication that a partner would have for a matter handled by another partner in the firm under similar circumstances."); Florida Bar Committee on Professional Ethics Opinion 90-3 ("an attorney's acceptance of joint legal responsibility for the case and agreement to be available to consult with the client is the quid pro quo for the attorney's receipt of a portion of the fee that does not represent payment for work performed."); New York County Lawyer's Association Committee on Professional Ethics Opinion 715 ("When lawyers assume `joint responsibility' in order to share a fee under DR 2-107 without regard to work performed, they are ethically obligated to accept vicarious liability for any act of malpractice that occurs during the course of the representation."); North Carolina State Bar Ethics Opinion 205 ("whenever a lawyer accepts a fee for referring a case to another lawyer, the lawyer remains responsible for the competent and ethical handling of the matter.").
[4] At the deposition of Falk, it was established that there was no written agreement for the division of a fee. Plaintiff then asked whether Falk had any fee division agreement, other than a written agreement, with Silver regarding plaintiff's lawsuit. Falk answered that whenever Silver would send him a case, he would pay him a share of the fee. He testified in substance that this had been the practice of the two attorneys over a period of years.
[5] In his motion for rehearing Silver points out that the preamble to the Rules of Professional Conduct which states, in part, that "[v]iolation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." He contends, therefore, that no liability can be imposed on him by virtue of his failure to comply with Rule 4-1.5. That argument does not survive the reasoning set forth in the Florida Supreme Court's decision in Chandris, S.A. v. Yanakakis, 668 So.2d at 185 (disapproving Harvard Farms, Inc. v. National Casualty Co., 617 So.2d 400 (Fla.3d DCA 1993)). Failure to execute a writing required by Rule 4-1.5 cannot be used as a method to avoid liability to the client.