774 So.2d 884 (2001)
VISTA DESIGNS, INC., Appellant,
v.
Melvin K. SILVERMAN, P.C., Appellee.
No. 4D00-1835.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
*885 H. Mark Vieth of Tilghman & Vieth, P.A., Miami, for appellant.
Karen Finkle, Fort Lauderdale, for appellee.
SHAHOOD, J.
Appellant, Vista Designs, Inc., appeals from final judgment entered in favor of appellee, Melvin K. Silverman, P.C., on its counterclaim, seeking the reimbursement of $25,000.00 it paid to Silverman based on a contract of representation which was void as constituting the unlicensed practice of law. We reverse and remand with directions that Silverman be required to disgorge the funds received from Vista Designs through a contract that was void ab initio due to illegality.
Silverman sued Vista Design to collect unpaid invoices for legal services rendered to Vista Designs by Silverman in the amount of $6,540.00. Silverman, a registered patent attorney, specializing in intellectual property, patents, trademarks and copyrights, had offices in Fort Lauderdale, Florida and Newark, New Jersey. Silverman alleged that he performed expert consulting services to Vista Designs in the capacity of "of counsel" to Vista Designs' counsel of record.
Vista Designs counterclaimed alleging that it engaged Silverman to pursue an action in litigation involving patent and trademark infractions and that its oral contract with Silverman was void as constituting the unauthorized practice of law because Silverman was not licensed to practice law in the State of Florida. As such, Vista Designs sought the reimbursement of $25,000.00 it had paid to Silverman in "legal fees."
At a bench trial, Vista Designs' President, Alan Pressman, testified that he contacted Silverman in 1997 regarding a dispute with subcontractor, Trend Marketing, for improperly copying Vista Designs' line of gift items. Pressman met with Silverman, and an associate, Michael Santucci, at Silverman's Fort Lauderdale office. Silverman advised that he would try, through various means, including litigation, if necessary, to stop the subcontractor from continuing its actions. According to Pressman, he had no knowledge that Silverman was not admitted to practice law in Florida until after Silverman filed suit against Vista Designs.
Silverman drafted cease and desist letters to Trend Marketing. After filing an injunction, Silverman recommended filing suit in the Middle District of Florida and gave Pressman a litigation budget for the undertaking. Silverman informed Pressman that Orlando attorney, Travis Hollyfield, would also be working on the case. As a result, Vista Designs paid both Silverman and Hollyfield for their services.
Silverman, a patent attorney and member of the New Jersey Bar and Federal District Court Bar in New Jersey, testified that his practice mainly comprised of patent trademark and copyright work before the U.S. Patent Office and as an expert or consultant on intellectual property. He claimed that under Sperry v. State ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963)[1] he was permitted to maintain an office in Florida as a registered patent attorney without being a member of the Florida Bar. According to Silverman, he entered into an oral agreement with Pressman to provide consulting or expert services in support of the attorneys *886 who would actually bring the litigation against the subcontractor. Silverman maintained that he informed Pressman that he was not admitted to practice law in Florida. However, he acknowledged that he drafted numerous documents, including the complaint, conducted legal research for use by trial counsel, and took part of a deposition.
Silverman claimed that his principal function was to support trial counsel and that Santucci filed the complaint in the Middle District and was counsel of record since he was not admitted to the Middle District. Hollyfield acted as local trial counsel and eventually replaced Santucci as lead counsel when Santucci withdrew. Hollyfield assumed Silverman was a member of the Florida Bar since he had an office in Fort Lauderdale. Silverman prepared memoranda and motions for review by Hollyfield prior to filing. Ultimately, the case against Trend Marketing settled during mediation.
Following trial, the court, in its final judgment, held that Silverman was not licensed to practice law in the State of Florida and that the "contract of representation by Silverman for Vista, which was never reduced to writing, was a void contract ab initio." Thus, Silverman was to take nothing on his action for unpaid legal bills. In ruling against Vista Designs' on its counterclaim, the trial court held that it was "persuaded by the holding in Bedell v. Marshall, 508 So.2d 574 (Fla. 4th DCA 1987) that this court is not permitted to order the disgorgement of money paid under a void contract." Bedell[2] held that a plaintiff may not recover real estate commissions paid to an unlicensed agent under a void contract. Bedell is distinguishable because in that case, disgorgement was held to be improper where there were other sums included in the jury's verdict besides the real estate commissions which were not invalid. See id. In this case, any monies owed in legal fees flowed directly from the void contract. Hence, the trial court in this case erred in relying on Bedell. Rather, we hold that under the facts in this case, public policy favors the disgorgement of funds received by Silverman.
In Cooper v. Paris, 413 So.2d 772 (Fla. 1st DCA 1982), the court held that an unlicensed real estate broker sought to enforce an agreement to pay a real estate commission, and the property owner counterclaimed against the Georgia-licensed broker seeking to have his conduct declared that of an unlicensed real estate broker and for a recovery of the sums previously paid to the broker. The trial court granted summary judgment in favor of the broker. On appeal, the First District held that the brokerage commission agreement was void and illegal ab initio.
The broad basis for the doctrine that contracts of certain unlicensed persons are unenforceable is that the courts should not lend their aid to the enforcement of contracts where performance would tend to deprive the public of the benefits of regulatory measures.
413 So.2d at 773. The general rule is subject to the exception that where the parties are not in pari delicto, the innocent party may recover. See id. The court held that an unlicensed real estate broker was obligated to disgorge monies paid to him as commission based on the regulatory measure, Chapter 475, Florida Statutes. Said statutes' manifest purpose was to prevent unscrupulous real estate practices and to promote the protection of the consumer/purchaser. See id. at 773-74. The Act subjects unlicensed real estate brokers not only to forfeit their right to compensation but also to criminal liability. See id. "To refuse to return the monies paid would affront the court's affirmative duty to see that the party violating *887 public policy not benefit in any way as a result of his wrongdoing." See id. at 774.
Since Bedell, this court in Ganot v. J.M.G. Construction Corp., 560 So.2d 804 (Fla. 4th DCA 1990), held that a developer who was an unlicensed real estate broker was not entitled to a commission on the sale of property to a construction company and that any commissions paid were correctly refunded based on chapter 475.
Silverman claims that because there is no regulatory measure requiring the forfeiture of fees where a contract has been declared void, disgorgement is improper. We acknowledge that unlike real estate brokers, there are no specific regulatory measures equivalent to Chapter 475 which require disgorgement of fees under the facts in this situation. However, regulatory measures make it a criminal offense to practice law without a license, see section 454.23, Fla.Stat., and the admission of attorneys to practice law is considered a judicial function, see section 454.021, Fla. Stat. While the trial court made no express finding that Silverman violated any law by not being admitted to practice law in Florida, he clearly violated the letter and spirit of the law by engaging in the unauthorized practice of law in Florida, notwithstanding the fact that he is admitted to practice before the State of New Jersey and Patent Bars. Clearly, public policy dictates that a party should be unable to benefit in any way as a result of one's wrongdoing.
In Chandris, S.A. v. Yanakakis, 668 So.2d 180 (Fla.1995), an injured Greek seaman entered into a contingent fee agreement in Florida with a Massachusetts attorney who specialized in international and maritime law. The attorney told the client that he was not a member of the Florida Bar. Thereafter, the attorney entered into an agreement with a Florida law firm to prosecute the claim. The seaman thereafter settled directly with the operators of the ship and its insurance company and discharged his attorneys. The attorneys filed an action against the ship operators based on tortious interference with a contractual relationship. The ship operators countered that the agreement between the attorney and the seaman was void ab initio where Yanakakis engaged in the unauthorized practice of law. Yanakakis claimed that Florida may not enjoin an attorney from advising on federal legislation where the seaman's claim was based on the Jones Act.
As in this case, Yanakakis claimed an exception under Sperry v. State ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). In Sperry, the Supreme Court determined that Florida could not enjoin a nonlawyer registered to practice before the United States Patent Office from preparing and prosecuting patent applications in Florida, even though those activities constitute the practice of law. The Chandris court held that unlike the federal patent law in Sperry, the Jones Act did not authorize practice by nonlawyers and gives state and federal courts concurrent jurisdiction over such claims. See Chandris, 668 So.2d at 183. There is no right of federal origin that permits lawyers to appear in state courts without meeting that State's bar admission requirements. See id. Further, the court noted that Yanakakis did not meet the exceptions set forth in The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978), which allows attorneys who are not Florida Bar members to give legal advice to clients in Florida where the attorney is in Florida on a transitory basis and makes clear to the client that he or she is not a member of the Florida Bar. See id. at 184. The court held that by entering a contingent fee agreement with the seaman, Yanakakis engaged in a professional activity without the authority to do so and therefore engaged in the unauthorized practice of law. See id. at 184. Florida has a unified bar, and all persons engaged in the practice of law here must be members of the bar to protect the public. See id.
As in Chandris, the Sperry exception is inapplicable in this case, and we hold that the trial court correctly determined that *888 Silverman's actions constituted the unauthorized practice of law. As stated by the trial court in this case:
He drafted pleadings. He advised clients. He consulted with clients. He took depositions. That his objections were not based on patent law at all, they were based on relevancy or on evidentiary grounds, and under Florida State law were inappropriate objections.
He conferred with opposing client, talked to opposing client or counsel. Clearly that was practicing law.
We reject Silverman's claim that he be entitled to keep the monies paid to him under a fee agreement which was declared void ab initio, based on quantum meruit. See King v. Young, Berkman, Berman & Karpf, P.A., 709 So.2d 572 (Fla. 3d DCA), review denied, 725 So.2d 1111 (Fla. 1998)(when fee agreement between attorney and client is void because it fails to comply with the Rules regulating the Florida Bar, the attorney is entitled to recover on the basis of quantum meruit.). This is not a situation where the agreement between the parties was merely void because it failed to comply with the Rules regulating the Florida Bar. Here, Silverman knowingly engaged in the representation of Vista Designs in Florida even though he was not admitted to practice before this State. His representation of Vista Designs continued even after suit was filed in the Middle District of Florida, a court before which he was also not admitted to practice. Clearly, his actions went beyond mere legal support or consulting. While Silverman conferred a benefit upon Vista Designs by providing expert legal services which may have assisted in the settlement of its legal dispute with Trend Marketing, public policy, however, dictates that a party should not benefit from its wrongdoing. Accordingly, this matter is reversed as to Vista Designs' counterclaim and remanded for further proceedings to determine the amount Vista Designs is to be reimbursed for monies paid to Silverman for legal fees under the void contract.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WARNER, C.J., and HAZOURI, J., concur.
NOTES
[1] In Sperry v. State ex rel. Florida Bar, 373 U.S. 379, 384, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the court held that Florida could not enjoin a nonlawyer registered to practice before the United States Patent Office from preparing and prosecuting patent applications in Florida, notwithstanding that such activity constituted the practice of law in Florida, in view of federal statute and Patent Office regulations authorizing the practice before Patent Office by nonlawyers.
[2] The holding in Bedell is unsupported by any decisional authority. See Bedell v. Marshall, 508 So.2d 574 (Fla. 4th DCA 1987).